J-S78002-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHAWN MCDANIEL, | |
| Appellant | No. 927 WDA 2015 |

Appeal from the Judgment of Sentence Entered September 24, 2012
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0009703-2011

BEFORE:  BENDER, P.J.E., OTT, J., and FITZGERALD, J.[*]

MEMORANDUM BY BENDER, P.J.E.:             **FILED NOVEMBER 23, 2016**

Appellant, Shawn McDaniel, appeals from the judgment of sentence of 4½-9 years' incarceration imposed following his conviction for multiple firearms offenses. Appellant claims that the verdict, which was premised on a finding that he constructively possessed a firearm, was against the weight of the evidence. After careful review, we affirm.

The following is Appellant's summary of the evidence produced at trial, which was uncontested by the Commonwealth in its own brief:

> Officer Luptak with the Homestead Police Department testified that he was on patrol on May 31, 2011. He received a dispatch about a domestic disturbance at 911 West Street. He was in uniform when he arrived at the scene. Another officer, Officer Strang, also was at the scene. Officer Luptak observed an SUV parked in the front, and a man, Derek Wilkins, and

---

[*] Former Justice specially assigned to the Superior Court.

woman, Kelly Franklin, on the sidewalk. Derek Wilkins, told the officer that the male inside the SUV had threatened to shoot him. The officer identified [Appellant] as the male who was inside the SUV. He was sitting in the left rear passenger seat. There was a male driver and possibly a child in the vehicle. Neither Mr. Wilkins nor Ms. Franklin was presented as a Commonwealth witness to testify with regard to seeing [Appellant] display a gun.

Neither officer had heard [Appellant] make any threats. Officer Strang approached [Appellant] and asked him if he had any weapons. Officer Strang then opened the door for [Appellant] to step out. He told [Appellant] he was going to pat him down. At that point, [Appellant] stepped out of the vehicle and took off running. The two officers chased him[,] commanding him to stop. They were about 15 feet behind him. [Appellant] ran down Tenth Avenue then cut through an alleyway towards Ninth. Officer Luptak said that [Appellant] cut through some yards and jump[ed] over a chain link fence into some weeds leading into an apartment building parking lot. The officer asserted that he briefly lost sight of [Appellant] at that point. The weeded area was bordered by a railroad tie wall approximately 6 feet high that dropped down into the parking lot. Officer Luptak admitted that at no point did he see [Appellant] with a gun. He also did not see [Appellant] throw anything.

The police apprehended [Appellant] in the weeds about 20 feet from where he jumped over the fence, and about 75 yards east and another 50 yards north from where he exited the vehicle. The pursuit lasted approximately three minutes. He was in possession of what was later identified as crack cocaine and several Oxycodone pills. He was not wearing any gloves, and no gloves were found in the area.

After [Appellant] had been transported to the police station, the officers searched the area where [Appellant] was apprehended. A nine-millimeter Glock was discovered on top of the railroad tie wall that separated the weeded area from a parking lot. A broken magazine was on the pavement 4 to 6 feet below the gun. The officer did not remember if the gun was loaded. The gun was in a holster. The officer did not see [Appellant] place or throw the gun on the wall.

- 2 -

According to the Crime Lab, the firearm was found to be in good operating condition and had a four-inch barrel length. No fingerprints were found on the gun. The cartridge, bullets and holster were not tested for fingerprints.

Officer Ian Strang testified that he spoke with Ms. Franklin at the time of the incident. He claimed that Ms. Franklin told him she had gotten into an argument with [Appellant] earlier that day and he had threatened to shoot her. Ms. Franklin pointed out [Appellant] to the officer. She appeared upset. The officer did not include any of this information in his report. He did not see [Appellant] with a weapon, nor did Ms. Franklin or anyone else tell him that [Appellant] had a weapon.

The defense presented the testimony of Ms. Kelly Franklin. She stated that [Appellant] is her boyfriend, and was her boyfriend at the time of the incident. Derek Williams was the father of one of her sons. Her brother drove her to Derek's house to retrieve her cellphone that Derek had taken from her earlier that evening at her mother's house. [Appellant] went with them and was sitting in the back seat with Ms. Franklin's kids. Ms. Franklin said that her brother got into an argument with Derek about returning the phone. However, she was certain that her brother did not make any threats about shooting anyone, nor did [Appellant]. Her brother stood on the running board of his vehicle yelling at Derek. [Appellant] stayed in the backseat and did not say anything. Ms. Franklin did not see [Appellant] with a weapon.

[Appellant] confirmed Ms. Franklin's testimony. He denied that he threatened to shoot anyone. He had outstanding warrants from California for probation violations at the time. He denied having a gun on him. He admitted that he had narcotics in his possession. When the police asked him to get out of the car, he was afraid of being caught with the drugs so he ran away.

Appellant's Brief, at 8-11 (citations to the record omitted).

Appellant's non-jury trial occurred on May 1, 2012, following which the trial court found him guilty of two firearm offenses, 18 Pa.C.S. § 6105 ("Persons not to possess, use, manufacture, control, sell or transfer

firearms") and 18 Pa.C.S. § 6106 ("Firearms not to be carried without a license"), and one count of possession of a controlled substance, 35 P.S. § 780-113(a)(16).[1] On September 24, 2012, the trial court sentenced Appellant to 4½-9 years' incarceration for his Section 6105 offense, and to no further penalty at all remaining counts.

After a protracted post-sentence history, Appellant's appellate and post-sentence rights were reinstated by trial court order dated March 24, 2015.[2] Appellant then filed a *nunc pro tunc* post-sentence motion on April 1, 2015. Following a hearing held on May 11, 2015, the motion was denied by the trial court. Appellant then filed a timely notice of appeal on July 10, 2015. Appellant filed a court-ordered, Pa.R.A.P. 1925(b) statement on July 27, 2015, and the trial court issued its brief Rule 1925(a) opinion 10 months' later, on May 31, 2016.

_____

[1] The Commonwealth withdrew charges of resisting arrest and possession of a controlled substance with intent to distribute.

[2] The procedural history leading to this outcome is not relevant to this appeal and, therefore, is only briefly summarized as follows. After failing to perfect his direct appeal, Appellant filed a *pro se* petition under the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546, in September of 2013. Prior counsel was appointed, who then amended the petition to include a claim seeking reinstatement of Appellant's direct appeal rights *nunc pro tunc*. Following a change to current counsel, the petition was again amended to include a claim seeking reinstatement of Appellant's post-sentence motion rights *nunc pro tunc* as well. As noted above, the court ordered the reinstatement of Appellant's direct appeal and post-sentence motion rights *nunc pro tunc* on March 24, 2015. It appears from the record that the Commonwealth did not oppose this action.

Appellant now presents the following question for our review:

Did the lower court abuse its discretion in denying the post-sentence motion which averred that the verdict of guilty of violations of the Uniform Firearms Act as contrary to the [weight of the] evidence where none of the witnesses observed Appellant in possession of a firearm, Appellant was not found in possession of a firearm at the time of his arrest, and the police did not see Appellant throw or drop anything while they were pursuing him?

Appellant's Brief, at 5 (unnecessary capitalization omitted).

We apply the following standard of review to a challenge that a verdict is against the weight of the evidence:

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason,

- 5 -

as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (internal citations omitted).

Appellant argues that the trial court abused its discretion in ruling against his weight-of-the-evidence challenge because

the evidence used to support [Appellant]'s conviction relied solely on the police officers' testimony that [Appellant]'s girlfriend told them that [Appellant] threatened to shoot her, and that fact that a broken gun was found in the area where [Appellant] was arrested after fleeing from the police. At trial, [Appellant]'s girlfriend denied telling police that [Appellant] had threatened to shoot her or anyone else[.] In fact, Ms. Franklin's alleged statements to the police were not contained in the police report. Furthermore, no one testified as to hearing [Appellant] threaten to shoot anyone, observing [Appellant] in possession of a firearm, or to seeing him throw or drop anything as the police pursued him. Notably, illegal contraband was found in his pockets - it had not been dropped or discarded. The area in which the gun was found was located next to a parking lot and was accessible to the public in general. [Appellant] was not wearing gloves, but his fingerprints were not found on the gun, the holster, or the cartridge.

Appellant's Brief, at 15-16 (citations omitted).

The trial court credited Officer Luptak's testimony that Appellant "threatened to shoot someone." Trial Court Opinion (TCO), 5/31/16, at 4. Specifically, Officer Luptak testified that when he arrived on the scene to investigate a disturbance, Derek Wilkins told him that Appellant "threatened to shoot him." Notes of Testimony (hereinafter "NT"), 5/1/12, at 8. The

trial court found this hearsay[3] statement credible, and reinforced circumstantially by Appellant's flight from police when Appellant was asked if he had "any weapons on him[.]" *Id.* at 10. Furthermore, the firearm at-issue "was located along the path that officers pursued [Appellant]. The firearm was found on the wall [Appellant] climbed over and a magazine matching the gun was located at the bottom of the wall in the weeds where it appeared [Appellant] had made a path." TCO at 4.

Thus, the evidence demonstrating Appellant's constructive possession of the seized firearm was circumstantial. There were no direct observations of Appellant's possessing the firearm. However, Appellant's purported threat to use a firearm, his flight from police when asked if he was armed, and the discovery of a firearm on his subsequent flight path, all tend to suggest that Appellant possessed that firearm before abandoning it during his flight from police.

This evidence was partially contradicted by Appellant's testimony and the testimony of his girlfriend, Kelly Franklin. Appellant testified that he

_____

[3] The admissibility of such hearsay evidence is a wholly separate question from Appellant's weight-of-the-evidence challenge. Notably, Appellant did not object at trial on hearsay grounds to this aspect of Officer Luptak's testimony, nor to other statements attributed to Wilkins and Franklin as reported by the officers. If Appellant believes he was unduly prejudiced by the form of this evidence, independent of its content, he should have challenged the admission of these statements in the lower court, and raised such claims on appeal if unsuccessful. Appellant has not cited any basis for this Court to ignore or discredit such testimony because it was hearsay when considering the merits of his weight-of-the-evidence claim.

never possessed the firearm in question, NT at 55, and that he fled because of an outstanding warrant and his possession of controlled substances, *id.* at 54. Ms. Franklin testified that Appellant never made any threat to shoot anybody. *Id.* at 45. Ms. Franklin also denied Officer Strang's testimony that, before Appellant's flight and subsequent arrest, she had described Appellant's threats or identified him for the officers when they arrived on the scene. *Id.* at 46-48.

The trial court "did not find [Appellant]'s testimony credible." TCO at 4. Although it never said so specifically, it appears as if the trial court also disbelieved Ms. Franklin's testimony. Given the totality of these circumstances, the court ruled that "it appropriately weighed the evidence" and "the court's decision [did] not shock the conscience of the court." *Id.*

We cannot ascertain any abuse of discretion in the trial court's decision. It can be fairly said that proof of Appellant's guilt for constructive possession of the seized firearm cannot be premised merely upon his purported threat to use a firearm, or his flight from police when asked if he was armed, or the discovery of a firearm on his subsequent flight path, when those circumstances are considered individually and/or in isolation. However, this web of facts, when considered in the aggregate, strongly suggests Appellant possessed the firearm in question, as the confluence of these circumstances bolsters their individual significance. Given the reasonableness of such a conclusion, in tandem with the trial court's discrediting the defense witnesses' testimony, the trial court's finding of guilt

was not "manifestly unreasonable." **Clay**, 64 A.3d 1055. Moreover, Appellant presents no argument that the court's decision was a product "of partiality, prejudice, bias or ill-will." **Id.** Accordingly, we conclude that the trial court did not abuse its discretion in rejecting Appellant's weight-of-the-evidence claim.

Judgment of Sentence **affirmed**.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/23/2016